# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EXCENTUS CORPORATION | § § | |
| v. | § § | CIVIL ACTION NO. 3:19-CV-0897-S |
| SUCCESS SYSTEMS, INC. and SMART C-STORES, LLC | § § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, and Motion to Transfer Venue [ECF No. 18]. For the following reasons, the Court grants the Motion to Dismiss for Lack of Personal Jurisdiction and finds as moot the Motion to Transfer Venue.

### I.  BACKGROUND

"This is a suit for a declaration that no legal contract exists between" Plaintiff Excentus Corporation ("Plaintiff") and Defendants Success Systems, Inc. ("Success") and Smart C-Stores, LLC ("Smart C-Stores") (collectively, "Defendants"). Am. Compl. ¶ 1. Plaintiff is a Texas corporation that develops and operates various loyalty programs, including a fuel rewards program with Shell Oil. *See id.* ¶¶ 8, 17. Success is a Connecticut corporation that, among other things, offers its clients a tobacco loyalty program. *See* ECF No. 19-1 ("Decl. of Scott Tarlow") ¶ 4; Am. Compl. ¶¶ 9, 19. Success and Smart C-Stores, which is a Delaware limited liability company with its principal place of business in Connecticut,[1] contend to have an agreement with Plaintiff that is the subject of this action. *See* Decl. of Scott Tarlow ¶¶ 38, 51; Am. Compl. ¶¶ 10, 13.

---

[1] As set forth in Defendants' Notice of Removal, Smart C-Stores is a citizen of Connecticut because its sole member is Scott Tarlow, who is a citizen of Connecticut. *See* Notice of Removal ¶ 7; *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079-80 (5th Cir. 2008).

One of Plaintiff's clients is Johnson Oil, which is a Shell Oil wholesaler in Illinois and Iowa. *See* Am. Compl. ¶ 18. According to the Complaint, Johnson Oil informed Plaintiff in late 2018 that it wanted to implement a tobacco loyalty program through Success, which would require Success to gain access to Plaintiff's confidential information. *See id.* ¶ 19. At Johnson Oil's request, Plaintiff worked with Success to facilitate "two integration tests" of the tobacco loyalty program for Johnson Oil. *Id.* ¶ 21. Plaintiff contends that its relationship with Defendants "went no further," that Plaintiff did not provide or promise to provide Defendants its confidential information, and that it expressly refused to enter into a broad partnership with Success. *See id.* ¶¶ 21-23. The Complaint further states that Plaintiff requested Success to destroy all of the confidential information it had already received, but that Success refused to do so.[2] *See id.* ¶ 24.

According to Plaintiff, however, Defendants believe that the parties entered into an oral agreement "to integrate [Plaintiff's] Fuel Rewards program with Success'[s] [tobacco loyalty] program." *Id.* ¶ 25. On March 11, 2019, Defendants sent Plaintiff a letter notifying it that it was in breach of this agreement and requesting a response by March 13, 2019. *See* ECF No. 25-1 ("Aff. of Anthony Logsdon") Ex. 4. Plaintiff responded by filing the present action for declaratory judgment on March 13, 2019, in the 116th Judicial District Court of Dallas County, Texas, *see* Notice of Removal Ex. A-1, and Defendants filed an action in the U.S. District Court for the District of Connecticut on March 27, 2019, alleging, among other things, antitrust violations and breach of contract claims. *See* Aff. of Anthony Logsdon Ex. 5 ("Defs.' Conn. Compl.").

---

[2] Plaintiff acknowledges that "the Parties have reached an agreement that Defendants' counsel will hold the data files" containing the confidential information "in trust and that, among other requirements, the data files will be used solely for purposes of this litigation." Am. Compl. ¶ 24.

2

Thereafter, Defendants removed Plaintiff's action to this Court and filed the present Motion to Dismiss for Lack of Personal Jurisdiction and Motion to Transfer Venue, which are now fully briefed and before this Court.

## II. ANALYSIS

Federal Rule of Civil Procedure 12(b)(2) allows defendants to move to dismiss claims for lack of personal jurisdiction. The plaintiff bears the burden of making a prima facie showing that a court has personal jurisdiction over a defendant. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014). "Proof by a preponderance of the evidence is not required." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citation omitted). In considering a motion to dismiss pursuant to Rule 12(b)(2), the court must accept the plaintiff's "uncontroverted allegations, and resolve in its favor all conflicts." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). The court may consider "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). The court "must assess each defendant's contacts with the forum state individually" to determine if personal jurisdiction exists as to each defendant. *See Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins.*, 921 F.3d 522, 543 (5th Cir. 2019) (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

For the reasons discussed below, the Court finds that it lacks personal jurisdiction over Defendants and grants the Motion to Dismiss for Lack of Personal Jurisdiction. Accordingly, the Court finds the Motion to Transfer as moot.

### A. *Smart C-Stores*

Plaintiff does not dispute that the Court lacks personal jurisdiction over Smart C-Stores. In its efforts to defeat the Motion to Dismiss, Plaintiff limits its argument to showing that the Court has personal jurisdiction over Success. *See* Resp. to Defs.' Mot. to Dismiss ("Resp.") 9-17. The

3

only evidence before the Court concerning Smart C-Stores is Defendants' Affidavit stating that Smart C-Stores has no offices in Texas and made no relevant contact with Texas. *See* Decl. of Scott Tarlow ¶¶ 38-56. Thus, Plaintiff abandoned any argument that the Court has personal jurisdiction over Smart C-Stores, and did not meet its burden of making a prima facie showing of personal jurisdiction as to this Defendant. *See Monkton*, 768 F.3d at 431. Therefore, the Court grants Defendants' Motion to Dismiss for Lack of Personal Jurisdiction as to Smart C-Stores.

### B. *Success*

Because Texas's long-arm statute extends to the limits of federal due process, this Court has personal jurisdiction over a nonresident defendant so long as the assertion of jurisdiction comports with the Due Process Clause of the United States Constitution. *See Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). Personal jurisdiction can be general or specific. *See Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). In this case, Plaintiff concedes that the Court lacks general jurisdiction as to Success. *See* Resp. 7 n.3. The Court agrees that it lacks general jurisdiction over Success, because its contacts with Texas are not "so 'continuous and systematic' as to render [Success] essentially at home in [Texas]." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Therefore, the Court will only address whether it has specific jurisdiction over Success.

In evaluating whether due process allows the exercise of specific jurisdiction, courts consider:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d. 266, 271 (5th Cir. 2006)). "Because 'specific personal jurisdiction is a claim-specific inquiry,' '[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim.'" *Inmar Rx Sols., Inc. v. Devos, Ltd.*, No. 18-11443, 2019 WL 4440400, at *3 (5th Cir. Sept. 16, 2019) (quoting *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009)).

### (1) *Minimum Contacts*

A defendant has sufficient minimum contacts with the forum state if the defendant "purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there." *Id.* (quoting *Seiferth*, 472 F.3d at 271). For example, a defendant can create sufficient minimum contacts to be subject to a court's specific jurisdiction by directing tortious actions toward the forum. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999) (finding specific jurisdiction where the defendant made fraudulent misrepresentations in letters, faxes, and calls directed at the plaintiff in Texas). In the contract context, a defendant may be subject to specific jurisdiction if the defendant negotiates remotely with a resident of the forum state "over an extend period of time," travels to that state, and "the benefit[s] of the [contract] would be realized" in that state. *Liberty Bankers Life Ins. v. Lenhard*, Civ. A. No. 3:16-CV-02417-N, 2018 WL 4026339, at *5 (N.D. Tex. Apr. 9, 2018); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985) (finding specific jurisdiction over a breach of contract claim where the contract provided for significant ongoing interaction with the plaintiff in the forum state).

In contrast, "[a] plaintiff's or third party's unilateral activities cannot establish minimum contacts between the defendant and forum state." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) (citing *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026,

5

1028 (5th Cir.1983)). And, while "[a] single act directed at the forum state can confer personal jurisdiction so long as that act gives rise to the claim asserted," *id.* (citations omitted), merely contracting with a resident of a forum state does not create minimum contacts sufficient to subject the defendant to specific jurisdiction in that state. *Conn Appliances, Inc. v. Williams*, 936 F.3d 345, 348 (5th Cir. 2019). Similarly, merely negotiating a contract via the telephone with an entity located in the forum state "is insufficient purposeful availment to establish [specific] jurisdiction." *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 489 (5th Cir. 2018). "This is particularly true when . . . 'an out-of-state defendant has no physical presence in the forum, conducts no business there, and the contract at issue "was not signed in the state and did not call for performance in the state."'" *Drake v. Murphy, Austin, Adams, Schoenfeld*, 740 F. App'x 91, 93 (5th Cir. 2018) (quoting *Blakes v. DynCorp Int'l, L.L.C.*, 732 F. App'x 346, 347 (5th Cir. 2018)), *cert. denied*, 139 S. Ct. 2641 (2019).

In the present case, Success has limited contacts with Texas. It is undisputed that Success is incorporated in Connecticut, has its principal and only place of business in Connecticut, has no offices in Texas, does not maintain any bank accounts in Texas, does not advertise in Texas, has no employees who are residents of Texas, and derives less than one-half of one percent of its gross revenue from Texas clients. *See* Decl. of Scott Tarlow ¶¶ 25-27, 29-32; Am. Compl. ¶¶ 9, 15. Although the parties agree that Success engaged in extensive negotiations with Plaintiff, a Texas resident, *see* Decl. of Scott Tarlow ¶¶ 16-17; Aff. of Anthony Logsdon ¶¶ 10-18, the uncontroverted evidence shows that none of Success's employees visited Texas during the negotiations, and the negotiations occurred exclusively by phone, mail, and email. *See, e.g.*, Aff. of Anthony Logsdon ¶¶ 10, 15-18; *id.* Exs. 2, 4; Decl. of Scott Tarlow ¶¶ 17, 34, 51-52. The calls, letters, and emails do not, however, create sufficient minimum contacts for the Court to exercise

specific jurisdiction over Plaintiff's claims against Success.[3] *See Conn Appliances*, 936 F.3d at 348 (merely contracting with a state resident does not create specific jurisdiction); *Trois*, 882 F.3d at 489 (mere negotiations are insufficient). Moreover, accepting Plaintiff's allegations as true, the parties' "relationship went no further" than "facilitat[ing] the tobacco-loyalty program at Johnson Oil-owned" gas stations in Illinois or Iowa. Am. Compl. ¶¶ 18, 20-21; *see also* Aff. of Anthony Logsdon ¶¶ 9-11; Decl. of Scott Tarlow ¶ 54. Success cannot be said to have "purposely directed its activities toward" Texas if the purpose of its negotiations with Plaintiff was to do business in Illinois and Iowa. *McFadin*, 587 F.3d at 759 (quoting *Seiferth*, 472 F.3d at 271). Nor could the Court find that Success "reasonably anticipate[d] being hauled into court" in Texas, *McFadin*, 587 F.3d at 759 (quoting *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006)), if the Court accepts as true Plaintiff's allegation that the parties' relationship was limited to conducting a "test" at Johnson Oil's gas stations out-of-state. *See* Aff. of Anthony Logsdon ¶ 11. Therefore, the Court finds that Success lacks the necessary minimum contacts with Texas for the Court to exercise personal jurisdiction over it in this case. *See also Jones v. Artists Rights Enf't Corp.*, No. 19-30374, 2019 WL 5406260, at *2-3 (5th Cir. Oct. 22, 2019) (finding no specific jurisdiction because the focus of the contract and its place of performance was outside the forum state, regardless of where the contract was negotiated, drafted, and signed).

Plaintiff's arguments to the contrary are unavailing. Plaintiff's principal argument is that the Court has specific jurisdiction over "Success because Success reached out to [Plaintiff] in Texas in an attempt to create a long-term, cooperative, wide-ranging business relationship with Texas-based" Plaintiff. Resp. 9-14. The fact that Success "attempted" to contract with Plaintiff

---

[3] These contacts may have been sufficient if Plaintiff were asserting a tort claim based on the negotiations, *see, e.g., Wien Air*, 195 F.3d at 212, but Plaintiff makes no such claim here. As explained *infra* § II(B)(2), Plaintiff's conversion and unjust enrichment claims do not arise out of Success's contacts with Texas.

7

or that the contemplated agreement was "an attempt" to foster "extensive cooperation" or "generate[] business activity in Texas," Resp. 9-13, is not sufficient to show that Success had *existing* minimum contacts with Texas. Success's potential future contacts with Plaintiff or Texas are not sufficient to show that Success purposefully availed itself of the privileges of conducting business in Texas. *Cf. Foyt v. Championship Auto Racing Teams, Inc.*, 947 F. Supp. 290, 294 (S.D. Tex. 1996) (finding that speculations about contacts are not sufficient).

Although the Supreme Court in *Burger King* held that a contemplated future relationship may subject a party to specific jurisdiction when reduced to a contract, *see* 471 U.S. at 474-75, the present action "is a suit for a declaration that no [such] legal contract exists." Am. Compl. ¶ 1. If Plaintiff prevails on its declaratory judgment claim, the Court would invalidate the agreement and the sole minimum contact that, according to Plaintiff, subjects Success to the jurisdiction of this Court. *See id.* ¶ 28 (requesting a declaration "that no legal contract exists between" the parties); *see also Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (explaining that "[u]ltimately, the plaintiff must show by a preponderance of the evidence that jurisdiction is proper" (citation omitted)). Therefore, *Burger King* and its progeny do not support a finding of personal jurisdiction in this case, as the Court must accept as true that no contract existed between the parties.[4] *See Alpine View*, 205 F.3d at 215; Am. Compl. ¶¶ 20-21,

---

[4] Even if the Court assumed that a contract existed, Plaintiff has not demonstrated that the contract was to be performed in Texas. *See Polythan Sys., Inc. v. Marina Ventures Int'l, Ltd.*, 993 F.2d 1201, 1205 (5th Cir. 1993) (citing *Command-Aire Corp. v. Ont. Mech. Sales & Serv., Inc.*, 963 F.2d 90, 94 (5th Cir. 1992)). Plaintiff states that, because Plaintiff provides fuel reward programs to over 1,500 gas stations in Texas, the alleged agreement would require "Success . . . to provide its Tobacco Program to numerous [Shell Oil] gas stations in Texas." Resp. 12; Aff. of Anthony Logsdon ¶ 6. While this is a theoretical possibility, Plaintiff has not demonstrated that the contract at issue actually called for any performance in Texas even accepting all of Plaintiff's allegations as true. *Cf.* Defs.' Mem. in Reply to Pl.'s Opp. to Mot. to Dismiss ("Reply") 3 ("No far reaching and collaborative relationship with Excentus in Texas was necessarily part of the agreement."). The Complaint states that the parties "relationship went no further" than "facilitat[ing] the tobacco-loyalty program at Johnson Oil-owned Shell-branded locations." Am. Compl. ¶¶ 20-21. The evidence in record similarly shows that the alleged agreement was primarily centered on the Johnson Oil stores in Illinois and Iowa. *See, e.g.*, Defs.' Conn. Compl. ¶¶ 28-30. On these facts, any potential performance in Texas is too "superficial and . . . attenuated" to subject Success to the Court's specific jurisdiction. *See ITL Int'l, Inc. v. Constenia, S.A.*, 669 F.3d 493, 500 (5th Cir. 2012).

28; Aff. of Anthony Logsdon ¶¶ 9-11. Consequently, the Court finds that Plaintiff did not demonstrate that Success has the requisite minimum contacts with Texas for the Court to exercise personal jurisdiction over it, and grants the Motion to Dismiss for Lack of Personal Jurisdiction as to Success.

### (2) *Affiliation Between the Contacts and the Claims*

Even if Success had sufficient minimum contacts with Texas, the Court finds that Plaintiff did not make a prima facie case that its claims arose out of those minimum contacts. "In order for a . . . court to exercise specific jurisdiction, 'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the forum.'" *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (first alteration added) (emphasis omitted) (quoting *Daimler AG*, 571 U.S. at 127). The Court does not weigh a defendant's contact with the forum and the affiliation between the forum and the claim on a "sliding scale," where "the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims." *Id.* at 1781. Rather, a defendant's activities in the forum "must 'create a substantial connection with the forum State,'" and without such "connection, 'specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State.'" *Inmar Rx*, 2019 WL 4440400, at *2 (first quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014); and then quoting *Bristol-Myers Squibb*, 137 S. Ct. at 1781)). Here, the Court finds that none of Plaintiff's claims arise out of Success's contacts with Texas that could establish personal jurisdiction.

First, Plaintiff has not made a prima facie showing that its declaratory judgment claim arises out of Success's minimum contacts with Texas. In this claim, Plaintiff "requests that the Court . . . declare that no legal contract exists between [Plaintiff] and [Success] that in any way obligates [Plaintiff] to provide data or other services to [Success]." Am. Compl. ¶ 28. The

9

determination of whether a binding contract exists turns on whether there was: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018) (quoting *In re Capco Energy, Inc.*, 669 F.3d 274, 279-80 (5th Cir. 2012)). "In determining whether an oral agreement is enforceable under Texas law, [the] [C]ourt looks to the parties' communications and the circumstances surrounding those communications." *Binh Hoa Le v. Exeter Fin. Corp.*, Civ. A. No. 3:15-CV-3839-L, 2019 WL 1436375, at *50 (N.D. Tex. Mar. 31, 2019) (citing *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied)). Because the determination of Plaintiff's claim involves solely contract formation, the Court only has specific jurisdiction over the declaratory judgment claim if the claim arises out of the minimum contacts that are related to contract formation.

However, none of Success's contacts with Texas relating to contract formation are legally cognizable minimum contacts. The negotiations over the phone and email do not amount to minimum contacts for specific jurisdiction purposes. *See Trois*, 882 F.3d at 489. Nor would the Court have specific jurisdiction over the declaratory judgment claim if the Court assumes that Success entered into an agreement with Plaintiff to provide services in Texas. *See* Resp. 9-13. While the existence of such an agreement may amount to a minimum contact sufficient to create specific jurisdiction over a contract claim, *see, e.g., Burger King*, 471 U.S. at 474-75, Plaintiff's claim seeking a declaration that no legal contract exists between the parties does not depend on the nature or content of the alleged contract, but on whether the contract was formed. *See Binh Hoa Le*, 2019 WL 1436375, at *5 (explaining that the issue of contract formation turns on "the parties' communications and the circumstances surrounding those communications" (citation

omitted)); *see also Huckaba*, 892 F.3d at 689. Thus, even if the Court found that Success had minimum contacts with Texas because it entered into an agreement with Plaintiff, the Court would find that the declaratory judgment claim arises not out of that agreement, but out of the calls and emails that are not cognizable minimum contacts for a contract-based claim. *See Trois*, 882 F.3d at 489; *cf. Ham v. La Cienega Music Co.*, 4 F.3d 413, 416 (5th Cir. 1993). Therefore, Plaintiff did not demonstrate that its declaratory judgment claim arises out of Success's minimum contact with the forum, and has not met its burden of showing that the Court has specific jurisdiction as to this claim.

Furthermore, the Court finds that it lacks specific jurisdiction over Plaintiff's conversion claim. For the Court to exercise specific jurisdiction over a tort claim, the defendant must have "commit[ted] [the] tort in whole or in part in [Texas]." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 229 (2012) (third alteration in original) (quoting TEX. CIV. PRAC. & REM. CODE ANN § 17.042). "The tort of conversion" under Texas law is "defined as the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights." *Id.* (internal quotation marks omitted) (quoting *Bandy v. First State Bank*, 835 S.W.2d 609, 622 (Tex. 1992)). Notably, "[t]he mere fact that the converted item originated in Texas is not sufficient to create personal jurisdiction under [Texas's] long-arm statute; the item must be in Texas when the conversion actually occurs." *Id.* at 230 (citation omitted).

In regards to its conversion claim, Plaintiff pleads that Success converted its "proprietary, confidential, and trade-secret information" by refusing to destroy it upon Plaintiff's request. Am. Compl. ¶ 32; Aff. of Anthony Logsdon ¶¶ 11-12. Although there is some dispute as to how Success obtained this information[5]—which the Court resolves in Plaintiff's favor—the conversion

---

[5] Plaintiff provided a sworn affidavit that "Success logged onto [Plaintiff's] computer systems to access the test data" using "Johnson Oil's credentials," Aff. of Anthony Logsdon ¶ 12, while Success provided a sworn affidavit and an

11

claim is not based on an unauthorized access to Plaintiff's data, but on Success's alleged refusal to destroy it upon Plaintiff's request. *See* Am. Compl. ¶ 32. There is no dispute that the alleged refusal occurred via email, *see* Aff. of Anthony Logsdon Ex. 2 at 108, and Plaintiff offered no evidence to show that the "data [was] in Texas when the conversion actually occur[red]." *Pervasive Software*, 688 F.3d at 230. Rather, the record is uncontroverted that the data was in Connecticut at the time Plaintiff requested that it be destroyed. *See* Decl. of Scott Tarlow ¶ 53 (stating that the data was in Connecticut); Am. Compl. ¶¶ 9-10 (noting that Success is a Connecticut corporation with a principal place of business in Connecticut). Therefore, the Court finds that Plaintiff did not meet its burden of making a prima facie showing that its conversion claim arose out of Success's contacts with Texas. *See Inmar Rx*, 2019 WL 440400, at *2; *Carmona*, 924 F.3d at 193 (citation omitted). "Because the alleged conversion by [Success] occurred, if at all, in [Connecticut], when [Success] refused to return [the information] to [Plaintiff]," the Court "lack[s] specific personal jurisdiction over the conversion claim." *Pervasive Software*, 688 F.3d at 230; *see also Jones*, 2019 WL 5406260, at *3 (same).

Third, the Court finds that Plaintiff did not make a prima facie showing that its unjust enrichment claim arises out of Success's contacts with Texas. Under Texas law, "[u]njust enrichment applies as a theory of recovery 'when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.'" *Fairchild v. Barot*, 946 F. Supp. 2d 573, 579 (N.D. Tex. 2013) (quoting *Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). Here, Plaintiff's unjust enrichment claim appears to arise out of the same facts as its conversion claim. *See* Resp. 14 ("The Court has personal jurisdiction over Success for [Plaintiff's] . . . unjust enrichment claim because Success should have reasonably foreseen that a

---

email showing that Plaintiff provided the credentials directly to Success. *See* ECF No. 28-1 ("Supp. Decl. of Scott Tarlow") ¶ 7; *id.* Ex. 1 at 1.

Texas court could exercise personal jurisdiction over it based on its decision to exercise wrongful dominion and control over Texas-based [Plaintiff's] confidential information."). However, the record is devoid of evidence showing that Success's alleged "decision to exercise wrongful dominion" over Plaintiff's data occurred in Texas. Rather, uncontroverted evidence illustrates that the data was in Connecticut at the time that Success allegedly refused destroy it. *See* Am. Compl. ¶¶ 9-10, 20, 24, 32; Aff. of Anthony Logsdon ¶¶ 11-12; Decl. of Scott Tarlow ¶¶ 25-37, 53. Because the alleged act of asserting wrongful dominion over Plaintiff's data did not happen in Texas, the Court finds that Plaintiff did meet its burden of establishing that its unjust enrichment claim arose out of Success's contacts with Texas.

For the reasons stated above, the Court finds that Plaintiff did not meet its burden of making a prima facie showing that its declaratory judgment, conversion, and unjust enrichment claims arose out of Success's minimum contacts with Texas. Accordingly, the Court grants the Motion to Dismiss for Lack of Personal Jurisdiction as to Success.

### (3) *Fairness*

Once the plaintiff demonstrates that the defendant has minimum contacts with the forum and that the action arises out of those contacts, the burden shifts to the defendant to show that the exercise of jurisdiction is "unfair and unreasonable." *Sangha*, 882 F.3d at 102. Because the Court found that Plaintiff did not meet its burden on the first two factors of the analysis, the Court does not consider whether Success has demonstrated that the exercise of jurisdiction is unfair and unreasonable. *See Inmar*, 2019 WL 4440400, at *3.

### III. CONCLUSION

For the reasons discussed above, the Court grants Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and finds as moot the Motion to Transfer Venue.

**SO ORDERED.**

SIGNED November 26, 2019.

_____
KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE